COPERTHWAITE v. GILL. See Case No. 3,298.

## Case No. 3,212.
### COPLAND v. BOSQUET.
[4 Wash. C. C. 588.][1]
Circuit Court, E. D. Pennsylvania. April Term, 1826.

#### CONDITIONAL SALES.

1. General principles of law applicable to sales of personal property, and to the change of property in the thing sold from vendor to vendee.

2. Sale of wine by A. to C., the agent of B. & Co., on the following terms. "Sold C. twenty pipes of wine at one dollar per gallon, at six months, payable in Philadelphia, or if his principal prefers cash, three per cent. discount, acceptance to be perfectly satisfactory; principal B. & C." Upon the importunity of C., the wine was delivered, upon this express condition, and the personal responsibility of C. pledged, that the contract should be complied with by B. & Co. The contract was not complied with, and B. & Co., sold and delivered the wine to the defendant, and were insolvent. C., who had pledged himself for the performance of the contract of B. & Co., paid to A. the sum due for the wine, and having taken a bill of sale of the same from A. brought replevin for the recovery of the wine. Held, that the sale was, by its terms, conditional; and no property in the wine passed from the vendor to the vendee, until payment or delivery of satisfactory paper. (2) The delivery was not absolute, but conditional, and did not, therefore, produce a change of property.

[Cited in D'Wolf v. Babbett, Case No. 4,220; The Marina, 19 Fed. 764; Harkness v. Russell, 118 U. S. 676, 7 Sup. Ct. 51.]

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

3. The defendant stands in no better situation than B. & Co., from whom he purchased. The general rule of law upon this subject.

[Cited in Homans v. Newton, 4 Fed. 886.]

This is an action of replevin for seventy-three casks of Teneriffe wine, of the value of $2168. 10 cents. The jury found a verdict (the verdict was so found under an agreement of the counsel; and under a further agreement, that the court might draw such inferences from the evidence as the jury might have done; and further, that if the opinion of the court should be in favour of the plaintiff, the judgment should be entered. for $2168. 10 cents, with interest from the 9th of July, 1825, until paid) for the plaintiff, subject to the opinion of the court, upon the following case: On the 1st of June, 1825, Beylle & Co. merchants of Philadelphia, addressed a letter to the plaintiff, a merchant of Boston, requesting him to purchase for them in that city, seventy casks of Teneriffe wine, at one dollar and fifteen cents per gallon, or less, if he could do so, at six months, payable, if possible, in Philadelphia; to which place it was to be shipped. On the 4th, the plaintiff purchased for account of Beylle & Co. of Mr. Amory, of Boston, seventy-three casks of this wine, agreeably to the following memorandum made at the time of sale by C. Blanchard, a clerk of Mr. Amory: "Sold E. Copland, Jun. the residue of the Teneriffe wine at one dollar and ten cents, at six months, payable in Philadelphia; or, if his principal prefers, cash, three per cent. discount, acceptance to be perfectly satisfactory; principals, Joseph Beylle & Co." On the same day, the plaintiff wrote to Beylle & Co. and informed them that he had purchased the wine at one dollar and ten cents the gallon, "satisfactory paper, payable in Philadelphia; or cash, three per cent. discount, at your option." A few days after this, the plaintiff applied to Mr. Amory for the delivery of the wine, and was informed that it would be first necessary to be satisfied of the goodness of the paper, as those to whom he had referred had not given favourable information. The plaintiff requested that the inquiry might be made in Philadelphia; which it was promised should be done. The plaintiff again applied for the wine, which was delivered to him expressly on condition that the terms of sale should be complied with. On the 7th of the same month, the plaintiff wrote to Beylle & Co. and enclosed them a bill of lading for thirty-three casks of wine, bought for them as per his letter of the 4th. On the 11th, plaintiff wrote again to Beylle & Co. and inclosed them a bill of lading for the residue of the wine, and also an invoice for the whole. The letter then proceeds to state, that "Mr. Amory has written to Philadelphia to make inquiries about the paper, in case you prefer paying by a note. If you prefer to pay cash, he will discount the interest at six per cent. per annum." On the 15th, the plaintiff again

wrote to Beylle & Co. stating, that Mr. Amory had informed him that he should not be satisfied with their single name, in payment for the wine, and that he should prefer the cash, three per cent. discount, and requesting to know what answer he should give. He adds, "my agreement was, satisfactory paper; or cash, three per cent. discount, at your option. When I made the purchase, I stated that the paper would be undoubted." On the 18th Beylle & Co. wrote to the plaintiff, expressing their astonishment at Mr. Amory's fears, and their indignation against the person who had endeavoured by false representations to injure their credit, requesting the plaintiff to discover the name of the person if he could. They then add "as to the settlement which Mr. Amory desires, tell him to make known to us his agent here, to whom we will give satisfaction." Amory having made inquiry in Philadelphia, he informed the plaintiff that the name of Beylle & Co. would not be sufficient, and their note must have a satisfactory indorser; or the alternative of the sale must be complied with. This demand the plaintiff requested might be forwarded to Philadelphia, which was done by Amory's letter of the 21st to Perit and Cabot of that place, in which he requests them to receive the note of Beylle & Co., provided they are perfectly satisfied with it, and if they are not, then to require such a note as can be cashed without any other names than those they may find on it; or otherwise to receive the money, deducting the interest, desiring them to show the letter to Beylle & Co. On the same day, the 21st, the plaintiff by letter informed Beylle & Co. that Amory had authorized Perit and Cabot to settle for the wine. Mr. Perit, in compliance with the request of Mr. Amory, called upon Beylle & Co. and communicated the contents of Mr. Amory's letter to one of the partners, who expressed his surprise, stating that they had purchased the wine at six months' credit, and exhibited the invoice, which was to that effect. He said they had no indorser to give, but that he was willing to give a note indorsed by his partner, or pay the money, five per cent. off, or return the wine, if more agreeable; all which was immediately communicated by Perit and Cabot to Amory by letter, dated on the 24th. This letter was communicated by Amory to the plaintiff, who said, "my bargain was satisfactory paper, or three per cent. discount for cash, which I communicated to Beylle & Co.; and if they will not ratify this contract, I must do it myself, and for myself." On the 27th Amory again wrote to Perit and Cabot, and requested them to call on Beylle & Co. for a compliance with their contract, and, in reply to this demand made by Perit and Cabot, Beylle & Co. offered to pay cash, five per cent. off, on the 12th of July, which was communicated to Amory on the 1st of July. On the 2d of July, Beylle & Co. being then

largely indebted to the defendant, the son in law of Beylle, borrowed of him an additional sum of $5000; and in discharge of their entire debt to him, they sold to him, on the same day, to the amount thereof, a quantity of goods, and amongst them the wine in question, which was delivered on the 4th. On the 5th the paper of Beylle & Co. was protested, and on the 7th they made a general assignment of all their estate and effects, in trust for their creditors. On the 9th Amory received information of the failure of Beylle & Co. and he immediately called on the plaintiff to comply with his engagement, which he did by buying the wine for himself, upon the terms of the sale to Beylle & Co., and receiving a bill of sale for the same; of which transaction Amory, on the 11th, gave notice to Perit and Cabot. On the 9th the plaintiff authorized his agent, Degrand, to receive the wine from Beylle & Co., or any other person.

On the 13th Degrand called on the defendant and demanded the wine, which was refused, whereupon this action was commenced.

This claim was resisted by the defendant's counsel upon the following grounds: that the sale and delivery by Amory to Copland were absolute, and so was the delivery by Copland to the defendant; that the offer of Beylle & Co. to return the wine not having been accepted, did not amount to a rescinding of the contract; and lastly, that however the question might be as between the plaintiff and Beylle & Co. the defendant, as a bona fide purchaser of the wine, without notice of the terms of the sale, or of the circumstances of the delivery, acquired a right to the property, which is to be protected. Cases cited, Long, Sales, 146; 3 P. Wms. 185; Brown, Sale, 8, 21, 22, 344, 390, 442, 507; Dyer v. Pearson, 3 Barn. & C. 38; Chit. Comm. Law, 128.

The plaintiff's counsel controverted all these points and cited the following cases: Leedom v. Philips, 1 Yeates, 528; Clemson v. Davidson, 5 Bin. 401; Harris v. Smith, 3 Serg. & R. 20; 2 Gall. 294, 296; Bruce v. Pearson, 3 Johns. 534; Bailey v. Ogden, 3 Johns. 399; Hussey v. Thornton, 4 Mass. 405; Hanson v. Meyer, 6 East, 625; Haggerty v. Palmer, 6 Johns. Ch. 437; Wheelwright v. Depeyster, 1 Johns. 471; Palmer v. Hand, 13 Johns. 434; Spring v. Coffin, 10 Mass. 31.

Dunlop & Biddle, for plaintiff.
Mr. Chauncey, for defendant.

WASHINGTON, Circuit Justice. The first question in this cause is, whether the sale by Amory to the plaintiff, as the agent of Beylle & Co. was absolute, or conditional? If the former, then the right of property was immediately changed, and became vested in Beylle & Co.; if the latter, it was not divested out of Amory until the terms of the contract were complied with; unless those terms were afterwards waived by Amory, by an unconditional delivery of the property. Some of the general principles of law applicable to sales of personal property, may be briefly stated as follows. Upon the completion of the contract of sale, and before delivery, the property of the thing sold is changed, and passes to the vendee. But if the sale be for money to be immediately paid, or to be paid upon delivery, payment of the price is a precedent condition of the sale, which suspends the completion of the contract until the condition is performed, and prevents the right of property from passing to the vendee, unless the vendor chooses to trust to the personal credit of the vendee. If credit be not given, this bargain is considered nothing more than a communication. This principle however is available to the vendor only where the goods remain in his possession after the sale, and are not delivered; for if they be delivered unconditionally, that fact is evidence of the agreement of the vendor to trust to the personal responsibility of the vendee, and operates in the same manner as if the sale had been on credit. If credit be given, the property immediately changes, and the vendee may bring trover for it, without paying, or tendering the price.

The memorandum made of the contract in this case, though very short, is very significant of the intention of the parties to it. It admits, we think, but of this construction, that the wine was to be paid for in one of two ways, at the option of the vendee, viz. with cash at the stipulated discount, or by paper to be perfectly satisfactory to the vendor. It is most apparent from the correspondence, as well as from the testimony of Mr. Blanchard; who, as clerk of Mr. Amory, made the contract; that it was so construed and understood by all the parties concerned in it. Although the names of the principals, from whom the purchase was made, were disclosed to Mr. Amory; he was nevertheless an entire stranger to them, as well as to their standing and solidity; as appears from the inquiries which he caused to be made in Boston, and in Philadelphia. It is highly improbable, therefore, that he would have agreed to sell them on any other terms than cash, or approved paper. If we have rightly construed the contract, it would seem to follow conclusively, that the sale was conditional, that is, for cash, or approved paper, and that this condition, whichever of the alternatives was elected by the vendee, was precedent of the sale. For if a sale for cash does, from the nature of the contract, imply a condition precedent, so as to prevent a change of the property until the money is paid, it is very difficult to perceive upon what ground a sale for approved paper should not equally imply a precedent condition.

There are not many cases to be found directly upon this particular subject; although the following seem to have a strong bearing

upon it. In the case of Payne v. Shadbolt, 1 Camp. 427, the defendant sold a parcel of wood to the plaintiff, to be paid for on delivery, by a bill at two months. The defendant permitted part of the wood to be removed without receiving any bill, but refused to part with the remainder until the terms of the contract should be complied with. In an action of assumpsit against the vendor for the non-delivery of the remainder of the wood, Lord Ellenborough held, that the delivery of a part of the wood was only a dispensation with the terms of the contract pro tanto, and that the vendor was entitled, at any time to stand on his rights, as they were originally established by the contract of sale. This is certainly a strong case. For what were the rights of the vendor on which he was entitled to stand, and which this decision maintained? To retain the thing sold till the terms of sale were complied with, by the vendee's delivering a bill at two months. But if this were a credit sale, and the stipulation to deliver such a bill did not amount to a condition precedent, the vendor had no right to retain possession of the wood, or of any part of it, but the vendee would have been entitled, as soon as the contract was made, to bring trover. So, in the case of Harris v. Smith, 3 Serg. & R. 20, which was replevin for goods sold at auction and purchased by the defendant, the terms of the sale being "approved indorsed notes at sixty days." After the sale the defendant offered to give a person whom he named, as his indorser, and promised to send immediately a note so indorsed to the auctioneer, upon which the goods were delivered. It was decided the delivery did not change the property. If, say the court, the vendor rely on the promise of the vendee to comply with the terms of the sale, and deliver the goods absolutely, the property is changed, though the condition be not performed. But where performance and delivery are understood to be simultaneous, possession obtained by artifice will not avail. Now here the contract for approved notes was considered to imply a condition precedent for the reason above mentioned. For if it did not, then it was a credit sale, and the property was changed by the sale without delivery. But the court call it a conditional sale, in so many words. The cases of Hussey v. Thornton, 4 Mass. 405, and Haggerty v. Palmer, 6 Johns. Ch. 437, have also a strong application to this part of the subject. We conclude, therefore, upon this point, that the sale was conditional. But although the sale was of that character, still it was competent to the vendor to dispense with the condition; and if the subsequent delivery of the wine was unconditional, that circumstance is evidence of such dispensation, and that the vendor looked not to the wine, but to the personal security of the vendee. It becomes necessary, therefore, to inquire,

2. Whether the delivery to the vendee's agent was absolute or conditional? Blanchard, who made the contract on the part of Amory, and who delivered the wine, swears that upon the plaintiff's first application for the delivery, it was refused, and that he was told that it would be first necessary for Mr. Amory to be satisfied of the goodness of the paper, as he had not received satisfactory information from those to whom application had been made. That, becoming impatient, the plaintiff again applied for the wine, when it was delivered, expressly on condition that he should cause to be produced a satisfactory acceptance, or cash interest off, agreeably to the terms of sale; and that he pledged his personal responsibility to this effect, which was considered a sufficient guarantee for the fulfilment of the terms of the sale. Here then was a delivery to the agent upon his promise, which, in the view of the law, was the promise of his principal, to fulfil the terms of the contract, as the express condition of the delivery; and to which was added the personal responsibility of the agent, by way of collateral security, and not with a view to a dispensation with the conditions of the sale; as was contended for by the defendant's counsel. Such a construction of the language of the witness would be in direct hostility with the terms of the engagement, as he has related them. If presumptive evidence was required to fortify the testimony of the witness, the cautious conduct of Amory throughout the whole of this transaction, and his previous refusal to deliver the wine until the terms of the contract were complied with, most abundantly furnishes it. These forbid the belief for one moment that Amory would, so soon after, make an absolute delivery. The cases of Leedom v. Philips, Hussey v. Thornton, Haggerty v. Palmer, before referred to, and Palmer v. Hand, are, particularly the three first, stronger cases than the present in favour of the vendor.

3. The only remaining question is, whether the defendant stands in any better situation than Beylle & Co., from whom he purchased? The general rule of law is, that a purchaser of chattels from a person in possession, who has no title, can acquire none against the real owner, unless he bought in market overt, notwithstanding he bought bona fide, and without notice of the manner in which the vendor became possessed of the property. I have met with no English case, in which, at common law, a contrary doctrine has been held. Nor were any American cases, at common law, cited, which seem to look that way, except such as were decided in those states, where, for the want of a court of chancery, a kind of mixed jurisdiction of law and equity is exercised by the courts of common law. The case of Haggerty v. Palmer was in chancery. If the possession be delivered by the real owner, together with the usual indicia of property, or under circumstances which may enable the vendor to impose him-

self upon the world as the real owner; this might be a case of constructive fraud, which would postpone, even at law, the right of the real owner in favour of a fair purchaser, without notice, and for a valuable consideration.

It was contended by the defendant's counsel that that is the present case. the delivery by the plaintiff to Beylle & Co. being unconditional, and the invoice stating on the face of it no other term of sale but six months credit. We are of a different opinion. In the first place, it is to be remarked, that there is no evidence to prove the defendant was a purchaser without notice of the terms upon which this wine was purchased and delivered. For as to the testimony of the partner of Beylle, that the defendant knew nothing of those circumstances, he manifestly spoke in regard to his belief; it is very difficult indeed to perceive how this fact can be got at at law, and yet, forming a part of the defendant's case, it behooves him to prove it. The defendant, being the son-in-law of Beylle, and his anxiety to remove the wine, at an unusually high price payed to the draymen in consequence of the day being the 4th of July, when it was difficult to employ labourers, presents some grounds of suspicion, unfavourable to this defence. But we do not form our opinion upon those circumstances; because the conclusive answer to the whole of the argument of the defendant's counsel upon this part of the case is, that the plaintiff acted throughout, until, by the conduct of Beylle & Co. he was compelled to take the wine to himself and pay for it, as the authorised agent of Beylle & Co. The plaintiff might, no doubt, on account of his personal guarantee, have made a conditional delivery to Beylle & Co. so as to retain a lien on the property, or in some other way have provided for his own security. But if he chose not to do so, it does not render that an absolute delivery to Beylle & Co. by the vendor, which was most clearly a conditional one. Upon the whole, we are of opinion, that the judgment must be entered in favour of the plaintiff for the sum of $2168.10 cents, with interest from the 9th of July, 1825.