# Patrick H. McGraw *v.* George Pulling, and George Pulling *v.* Patrick H. McGraw.

To constitute a partnership as between the parties thereto, there must be a joint ownership of the partnership property, and an agreement, either express or implied, to participate in the profits and share the loss of the business.

Pulling agreed to give his notes for $5,000 to McGraw for a half interest in his drug store; the two to be partners in that business. McGraw, believing that Pulling could execute the notes at any time, suffered him to act as a partner; to buy and sell goods in the partnership name, and hold himself out to the world as a partner; but Pulling failed to execute his notes for his share of the partnership stock, and advanced no money to the concern ; held by the court, that the delivery of the notes was a condition precedent, and that no right of partnership vested in Pulling until he complied with it.

In sales of goods to be paid for in cash, or secured by notes, the payment of the one or the delivery of the other is a condition precedent implied in the contract of sale; and in such case if the goods are even delivered, yet if the delivery is made subject to the delivery of the note to be given, the right of property in the goods is not changed.

The original terms of a partnership may be waived or tacitly changed by the conduct of the partners, so as to substitute new terms and conditions ; but before the terms of the original agreement can be considered as waived, superceded or dispensed with, it must appear that some new terms have been agreed upon as a substitute.

Where by the terms of a contract the acts to be performed are mutual and dependent, either party may abandon the contract upon the failure of the other to comply with his part of it.

Where goods are to be paid for on delivery, if, on the delivery, the vendee refuses to pay for them, the vendor has a lien for the price, and may resume the possession of the goods, upon the ground that the delivery was conditional.

The first canon of the law of partnership is, that each party must bring something either in money, property or labor, into the common stock or fund. A partnership formed upon any other basis would be a mere nullity.

The complainant in this case states, that for some time previous to January, 1835, George Pulling, the defendant, had been his clerk in his apothecary store; that being well pleased with him as a clerk, he proposed to take him in as a partner in his business,

provided Pulling would execute to complainant his note with a satisfactory indorser for the sum of five thousand dollars, that being one half of the estimated value of complainant's stock of drugs and medicines then on hand; said note to be dated on the first day of January, 1837, and payable on the first of January, 1838, with interest; that thereupon complainant would enter into a written agreement of partnership with said Pulling, and make over one half of said stock to him. Pulling assented to the proposition, and complainant McGraw had written articles of partnership drawn up and shown to Pulling, ready to be executed on the delivery of said note by Pulling. Pulling did not immediately deliver said note, but confiding in his promise and ability to do so, McGraw suffered Pulling to appear and act as his partner in his said apothecary store. About the fifteenth of January, 1837, Pulling expressed his fear that if he gave the note, as previously agreed, he would not be able to pay it at maturity. McGraw then agreed with Pulling to take two notes for twenty-five hundred dollars each, the one payable on the fifteenth day of January, 1838, and the other on the first day of February, 1838. The notes were drawn, and Pulling told McGraw that one Walter Irwin would indorse them, which was satisfactory to McGraw. Pulling however neglected to execute and deliver the notes, and the same were finally returned unexecuted. In the mean time Pulling had been acting as a partner of McGraw on the faith of said agreement, and goods had been purchased in their joint name. In the month of December, 1837, McGraw became dissatisfied with the delay of Pulling to complete his contract, as also with his neglect and inattention to business, and proposed a settlement; but Pulling refused to settle until he had paid for half of said stock of goods, but made no offer to pay for the same. On the fourth of January, 1838, McGraw again offered to execute the articles of partnership, provided Pulling would pay the five thousand dollars, which, by the terms of the first agreement, was then due. Pulling refused the offer. During this time about eight thousand dollars' worth of goods had been purchased in the name of McGraw & Pulling, five thousand of which had been paid from the proceeds of the sales of the goods of McGraw, Pulling having never advanced anything towards the capital stock, or in payment

for the goods, but on the contrary, taken about one thousand dollars out of the proceeds of the store. The bill prays for an account to be taken between the parties, and that Pulling may be perpetually restrained from intermeddling with said store, the books, accounts, &c., upon the execution by McGraw of a bond with sufficient security to indemnify Pulling against all claims that may come against him as an acting partner in said concern.

The answer of Pulling admits the offer and acceptance of the partnership, but denies that there were any such conditions annexed to it as alledged by McGraw; charges that the partnership actually commenced on the 1st of January, 1837; admits the articles of agreement were drawn up; denies that he assented to them; admits that the goods were estimated at ten thousand dollars, and that McGraw offered to take notes, as stated in his bill, and that it was finally agreed upon that Pulling should give his two notes for twenty-five hundred dollars each, to fall due on the 1st of February and March, 1838; denies neglect and inattention to the business of the concern; admits that eight thousand dollars worth of goods were bought in the partnership name; that he never advanced any thing to the partnership, but says said goods were partly paid for out of the joint funds of McGraw and Pulling; admits the receipt of one thousand dollars, or thereabouts; states that he was an experienced and skilful druggist, and was about to enter into business himself on his own account when McGraw made the said offer of partnership, as respondent believes, to prevent competition in business; denies that the execution of the notes was a condition precedent to the commencement of the partnership, but says they were to be given as collateral security, and that the same were to be paid out of the proceeds of the business; denies that the notes were ever presented to him by McGraw to be signed, and says he has always been ready to execute the same, and have them indorsed.

After filing this answer Pulling filed a cross bill, charging the same matters contained in his answer, and further stating that he was a full and unconditional partner of McGraw; that during that period the profits of the concern were about twenty-five thousand dollars; that he is entitled to one half of the same; that McGraw fraudulently refrained from presenting the notes to him

for execution, and now falsely pretends that because said notes were not executed Pulling is no partner in the concern, and not entitled to a share of the profits; that McGraw has filed his bill in chancery and obtained an injunction restraining him, &c.

The cross bill prays that the partnership may be dissolved; that an account may be taken; that McGraw be decreed to pay Pulling what may appear to be due; that a receiver be appointed to take possession of the partnership effects, and to carry on and conduct said establishment until the final decree of the court; and that McGraw be restrained from intermeddling, &c. in the mean time.

McGraw answers the cross bill, and denies all its material allegations; states that he did draw up the notes and present the same to Pulling to be signed and indorsed, and told Pulling at the time that Walter Irwin would indorse them, and that his indorsement would be satisfactory. Pulling took the notes, retained them several days, and returned them unindorsed; denies that he ever agreed to draw up and present said notes to Pulling, but that the same was a voluntary undertaking; denies that Pulling had any intention of opening a drug store on his own account; charges that Pulling removed the books of account from the store without McGraw's consent or knowledge; that Pulling was a great part of his time absent, and neglected the business of the store; denies that the profits of the store were twenty-five thousand dollars, and says they will not exceed two thousand dollars; and insists that all the statements of the original bill are true, and is ready to prove the same.

Much testimony was taken to show the amount of business done by McGraw and Pulling, and the nett profits arising therefrom; but inasmuch as the only question decided by the chancellor was as to the existence of a partnership between the parties, the evidence to that point only will be given.

Mark Izod testified that he understood from both parties that Pulling was to be a partner with McGraw in the drug store, in the city of Natchez, in the year 1837, on condition that Pulling was to execute certain notes, I think two, for the amount, altogether, of five thousand dollars, which notes he knew were never executed; that in January or February, 1838, McGraw made Pulling a proposition for an amicable settlement of their business, that wit-

ness was called upon by McGraw to be present; that McGraw proposed to sell out to Pulling on certain conditions mentioned, but Pulling refused to make any settlement, saying that "he was in possession of the premises, and that he could not be turned out except by force." Witness, at the request of McGraw, then made Pulling another proposition for an amicable settlement, which was refused. McGraw then asked Pulling to execute the notes according to agreement, which he refused to do, saying he had possession of the premises, &c.

Michael Cotter testified, that about the first of February, 1837, McGraw handed to Pulling two notes of two thousand five hundred dollars each, in presence of witness, at the store of McGraw & Pulling; McGraw then left the store, and Pulling said to witness that Walter Irwin had once done him a favor by indorsing for him, and he intended to try him again; does not know that the notes were ever completed, but Pulling said he intended to do so, and that said notes were to be executed for Pulling's share in the drug store.

The correspondence of McGraw & Pulling with several commercial firms in Boston and New Orleans, was proven, to show that McGraw recognized Pulling as a partner; also an indenture, leasing a store, in the hand writing of McGraw, signed "McGraw & Pulling," by McGraw himself; the rent of the store was paid alternately by McGraw and Pulling, and the receipt given to them as a firm in their firm name.

Robert C. Campbell states that he was employed by Pulling to post books of the firm, in July or August, 1837; that McGraw frequently talked with him about the books, and hurried him to make out the accounts; the same were made out in the name of McGraw & Pulling. In the spring of 1837, McGraw told witness that he had taken Pulling in partnership with him in the drug business; in the latter part of 1837, McGraw and Pulling had some difficulty, and the former told witness that he wanted no advantage of Pulling; that he would make him a proposition to buy or sell; heard McGraw frequently speak of the business of the firm, and never heard him deny the partnership. In December, 1838, McGraw and Pulling had a quarrel; Pulling complained that McGraw had sent orders to New York for goods for the firm

without Pulling's knowledge, which McGraw denied. Pulling had the principal charge of the business, but McGraw attended to it when Pulling was absent. Some time after the partnership had commenced, witness heard Pulling say he was to give notes for his share of the stock, and that McGraw was to get them indorsed. McGraw & Pulling advertised goods for sale in the newspapers.

J. P. Daily states that in the commencement of the year 1837, McGraw told him that Pulling was a partner; there were certain conditions which Mr. Pulling was to perform; the giving of notes by Pulling for his share of stock; McGraw said Pulling could fix them at any time; that Mr. Irwin had promised to indorse them for Pulling. Witness thinks Pulling one of the most able apothecaries in the place.

Thomas Ran states that McGraw told him that Pulling was his partner in the drug store.

William Frisby and Asa Frisby say that Pulling is a good apothecary.

James Edwards states that he published the Natchez Courier, and that McGraw sent him an advertisement to publish, in his own hand writing, signed "McGraw & Pulling," and headed "Imported Medicines." Witness published same; knew there was a proposition for a partnership between them, and that Pulling was to give notes for five thousand dollars for his share of the stock; they treated each other as partners, and acted as such before the notes were executed. Witness drew up articles of partnership, but does not know that they were executed.

GEORGE WINCHESTER for complainant, McGraw.

Although, as between McGraw and Pulling and third persons, a partnership existed, yet, as between McGraw and Pulling, there was no partnership, and Pulling has no claim as partner.

As between McGraw and Pulling, according to the statements of both, to constitute a partnership between them, each must have been owners of half the capital stock, and each was to derive half the profits and abide half the losses.

If Pulling never put into the concern five thousand dollars, (the capital stock being agreed by both at ten thousand dollars,) then

he could not be entitled to half the profits, or liable for half the losses, as between themselves; and, if so, there was no partnership as between them.

Now, it is clear, from the whole case, that Pulling never put any thing into the concern in the shape of capital, and he distinctly admits this in his answer. An ingenious attempt is made, however, to make him owner of half the stock, by setting up a claim to half of the profits of the whole capital stock, owned exclusively by McGraw, and then making this half the profits a payment into the concern of half the capital. But the fallacy of this attempt is exposed by a mere statement of it.

Pulling was to secure, by notes indorsed, the payment of five thousand dollars to McGraw, for an assignment by McGraw to him of half the capital stock—the whole of the five thousand dollars to be paid, according to Pulling's own statement, by the 1st of March, 1838. But could he be allowed to withdraw this sum from the concern to pay it with? That would be to withdraw his whole stock from the concern in the very act, and at the very moment, of becoming the owner of it. But, aside from the absurdity of this attempt, the terms of their contract for a partnership repel it. It is immaterial whether the execution of the notes was to be a condition precedent to McGraw's assigning to him one half the stock or not; the execution and delivery of the notes, with an indorser, was to be the consideration of the assignment, and McGraw was not bound to assign until Pulling executed the notes. Pulling has never given the notes, and can therefore make no pretence to be the owner of half the stock.

And although McGraw, even after the notes were to have been paid, still offered to let him become the owner of half the stock if he would then pay him the purchase money, and to settle with him as a partner, allowing him half the profits, still Pulling failed or refused to make the payment.

As to his excuses for not delivering the notes, or for not paying the five thousand dollars, even if they were ever so good and reasonable, they could not make him owner of half the stock. He could not acquire a title to one half of McGraw's stock of medicines, because McGraw did not draw up and prepare the notes for him, even if McGraw pomised so to do; nor, when the time arri-

ved at which the stock was to be paid for, and McGraw offered to let him into the ownership if he would then pay, could he acquire a title to the stock, because he was unable to pay, and McGraw knew he was unable.

To have become entitled to one half the profits, he must, according to their contract, have become the owner of half the stock; and, to have become the owner of half the stock, he must, according to their contract, have given his notes with an indorser, to secure the payment, or he must have paid the consideration of five thousand dollars. He has never done either. He has never put any thing into the concern. He has never paid for a dollar of the stock. If, then, he is entitled to half the profits, he is entitled to it solely for his services.

If McGraw had agreed to furnish the whole capital stock, and Pulling to give his services, and upon these terms a mutual partnership had been formed, in which they were to divide equally the profit and loss, then Pulling might claim one half the profits. But this was not an equal partnership, in which one was to furnish the whole capital and the other merely his services. Pulling was to put in half the stock, and, to enable him to do so, McGraw offered to sell him half, for his notes indorsed, for five thousand dollars.

Can Pulling call upon this court to compel McGraw to convey half the stock, without showing that he has either given the notes or offered to give the notes, or to pay the money, in consideration of which he was to become the owner of half the stock?

But, until he can show himself the owner of half the stock, he can never claim half the profits, upon *his own* statement of the terms of the partnership.

The excuse set up for not giving the notes—suppose McGraw promised to prepare the notes: it is idle to talk of such a promise as constituting any part of the contract, or the failure to prepare the notes as any excuse for not giving the notes. Pulling could have prepared the notes himself, if McGraw failed or refused to do so. But, to prevent all controversy on so singular a position, McGraw has proved, by two witnesses, that he did prepare and deliver to Pulling the notes to procure an indorser.

But it may be said that goods having been purchased in the

partnership name, would make them partners as between themselves.   That might be true to the extent of the goods so purchased, if there had not been an express agreement as to the terms of the partnership.   But as there is an express contract on both sides as to the terms of the partnership they were to form, in which they were to be equal owners of the whole stock, and equally interested in profit and loss, it is impossible to establish any different partnership.   How would this court ascertain what were the profits and losses on the particular goods and medicines so purchased in their joint names, so as to distinguish them from the profits and losses on the stock owned exclusively by McGraw? It could not be done if attempted, and, to do it, the court would have to disregard the contract of the parties, and create a new contract of partnership for the particular benefit of the party who has failed to comply with the express contract for a partnership between them.

The purchase of stock in their joint names is evidence of partnership as between them and the persons of whom they purchased; but it is no evidence of a partnership, or the particular terms of a partnership, between themselves.   As between McGraw and Pulling, McGraw might be wholly bound to pay for the goods bought in their joint names; and yet, as between McGraw and Pulling and the vendors, both might be bound.

There is no pretence that Pulling has ever paid for any portion of the goods; and, even should he have to pay, McGraw would be bound to him for the same, if, as between themselves, there was no partnership.

If, in order to settle and collect old accounts, or for any other cause, McGraw chose to permit Pulling to appear to the world as his partner, and Pulling chose so to appear, and as such to become bound as partners to third persons, it was competent for them to do so without being partners as between themselves.

The partnership, if any exist, is an entire thing, and this court cannot divide it.   It cannot be made a half or a quarter partnership concern between Pulling and McGraw, and three quarters, half, or quarter, &c. the sole concern of McGraw.

If partner at all, it must be under the express agreement which excludes an implied one, and he must be an equal partner in the

31*

whole capital stock and profit and loss.　Gow on Partnership, page 8—9.

Even in a case of an implied partnership, in 10 Vesey, page 56, where the jury found the son entitled to a quarter of the profits, the chancellor says : " In this view the result appears extraordinary.　The proposition being, that the son was interested in some share not exceeding a moiety, the jury in some way upon the footing of a *quantum meruit*, find him entitled to a quarter.　I have no conception how that principle can apply to a partnership."　Here the express agreement between Pulling and McGraw excludes a *quantum meruit.*

Actions at law may be maintained by one partner upon a covenant or contract in articles of partnership for a failure to enter into the partnership according to covenant, 2 Stark, N. P. 107; Gow 111.

Suppose Pulling should sue McGraw at law for not entering into the partnership, could he recover by proving that McGraw agreed to draw the notes which Pulling was to give him and failed to do it.

The argument that Pulling's half of the profits has paid for half the stock, and that he is thereby under the agreement a partner, assumes that he is entitled to half the profits ; whereas his title to half the profits depends under their express agreement upon his first becoming the owner of half the stock.

But how is it to appear that his half the profits would pay for half the stock.　His right to apply half the profits as a payment of the stock, could only arise upon a settlement of an account of profit and loss, which settlement defendant seeks to compel by a decree of this court.　13 East, 7.

But before he can obtain a decree compelling McGraw to account as partner, he must show that he is a partner, and that fact he seeks to establish by the account to be taken.

Suppose on taking the account it should appear there are no profits, but a loss.　Then he has not paid for half the stock, he has never been the owner of it, and was no partner.

Under the agreement, by this mode of making him a partner, if the profits are equal to the amount, or more than what he was to pay for half the goods, then he is a partner and entitled to the profits.　But if it is a losing concern, and the goods were burnt, or the capital wholly sunk by bad debts, then he is no partner, and

owes McGraw nothing for the goods, and is subject to no loss as between himself and McGraw. This will answer to no definition of partnership in elementary books or books of reports.

The matter is so plain I have not thought it necessary to make much reference to authorities, except from Digests. 7 Bingham 714; 3 Bos. & Pul. 235; 6 Sarg. & Rawle, 337; 9 Johns. Rep. 489; 17 Idem, 40; 6 Pick. Rep. 372; 4 East, 141; 2 B. & C. 401, or 9 E. C. L. K. 122; 2 McCord's Rep. 421; 4 Johns. 740, 251; 2 Johns. 300; 17 Vesey, 410; 18 Vesey, 300; 19 Vesey, 291.

Pulling's cross bill should be demurred, and the injunction in McGraw's bill be rendered perpetual, and Pulling decreed to pay the costs.

This cause was at hearing at the last term, and my argument and brief prepared for submitting it then, being set for hearing for a particular day. Since the commencement of the present term, defendant notified McGraw and took several depositions of witnesses, at which time I understand by letter from McGraw, he introduced some witnesses also. All this evidence, even under the latitude of our statute, I conceive to be irregularly taken and improper.

I have not examined any of it, as I conceive no possible evidence in the cause can, under the pleadings, make any difference in the decision; as no other partnership than the express one stated by complainant and admitted by defendant, is pretended in the pleadings on either side.

I understand from McGraw's letter, the object of the new evidence was to prove the profits of his concern greater than he admits in his answer to the cross bill. If his answer in this respect were even disproved by positive and sufficient evidence, it still leaves the question where it was before, viz: can Pulling make himself a partner if the profits of McGraw's stock was sufficient to pay McGraw the $5000 Pulling was to pay or secure to be paid to become a partner, and come out no partner if it turns out on taking the account that the profits are not sufficient. In other words, is he a partner for sharing the profits in the event of a profitable concern, but no partner for sharing the losses in the event of a losing concern. And if he is to be made a partner, what are the terms of the partnership to be newly raised between them?

But the parties must be confined to the express agreement for a partnership between them, as no other agreement is set up in the pleadings.

MONTGOMERY & BOYD for respondent Pulling.

To constitute a partnership *inter se*, the existence of written articles is not essential ; the mere act of trading together jointly being sufficient for that purpose, Gow, marginal p. 5. Where there are articles of co-partnership they will supply the rule by which to determine any disagreement, yet the subsequent transactions of the partners may control and supersede clauses in those articles, or may furnish evidence of a new agreement different from the written articles, provided those transactions manifest a different intention, for whatever may be the language of a partnership deed, the dealings and transactions among the partners may be such as to amount to distinct evidence that some of the articles were waived by the parties, &c. Gow, page 11; 6 S. & R. 337 ; 6 Pick. 372 ; 9 John. 489; 17 John. 530.

An actual ostensible partner is one who not only participates in the profits and losses, but who appears and exhibits himself to the world as a person connected with the partnership. Gow, 14. Either his right to share in the profits, or the permitted exhibition of his name as a partner, would be sufficient to make him responsible to third persons. Gow, 14. And wherever the existence of a partnership as to third persons is established, the presumption of law is that a partnership exists between the parties. Gow, 13–14; 2 Campbell, 45.

THE CHANCELLOR.

It is necessary, to a correct understanding of this case, that I should advert to the leading facts as they appear in the pleadings and proof. The original bill states, that in January, 1837, McGraw, having on hand a stock of drugs and medicines in the city of Natchez, worth ten thousand dollars, proposed to the defendant, Pulling, (who was then acting as his clerk,) the formation of a partnership, on condition that Pulling should give his notes, with good security, payable thereafter, for five thousand dollars, being one half the estimated value of said stock of drugs and

medicines. That this proposition was assented to by Pulling, and that upon the faith that Pulling would comply with his part of the agreement, the parties were thereafter held out as partners in the business of buying and vending drugs and medicines. That Pulling took some blank notes, promising to sign them and have them indorsed by Walter Irwin, which were to be returned to McGraw in payment of one half of said stock. That Pulling has never executed and delivered the notes aforesaid, or paid any part of the five thousand dollars, but refuses to do either; and has neglected the business and withdrawn money from the house, &c.; and prays that Pulling may be perpetually injoined from interfering with the concern, upon his giving him a bond of indemnity against any partnership liability.

Pulling admits in his answer the proposition for a partnership, but denies that the execution and delivery of the notes was a condition precedent to the commencement of the partnership, and insists that the contract of partnership was complete on the first of January, 1837. He admits that he refused to sign the articles of partnership, offered as exhibit (A) to complainant's bill, and says that the notes which he was to give were to be held up until they could be paid out of the profits of the concern. He has filed a cross bill, in which he prays for a dissolution of the partnership and for an account, &c.

The most of the testimony in the case is directed to the establishment of various acts and admissions on the part of McGraw, with reference to the existence of a co-partnership between himself and Pulling. Both parties distinctly admit that there was an agreement for a partnership; but it is insisted by McGraw that this agreement was not carried into effect in consequence of Pulling's failure to comply with his part of the agreement, and that a partnership, therefore, never did exist as between them. There is no question here as to the right of third persons to treat these parties as partners; the question is, are they to be considered as partners as between themselves? To constitute a partnership, as between the parties thereto, there must be a joint ownership of the partnership property, and an agreement, either expressed or implied, to participate in the profits and share in the loss of the business. Story on Partnership, 20; Chase *v.* Barrett,

370　　　SUPERIOR COURT

Patrick H. McGraw *v.* George Pulling, and George Pulling *v.* Patrick H. McGraw.

4 Paige 148. Was there such joint ownership in this case? It is not pretended that the notes which were agreed to be given by Pulling were ever delivered; his right therefore to one half of McGraw's stock in trade must depend, first, upon whether the delivery of the notes was a condition precedent to such rights, and to the commencement of the contemplated partnership? and if so, secondly, whether the conduct of McGraw, in recognizing the existence of a partnership, was a waiver of that condition.

The testimony of Edwards proves that Pulling was to become a partner and give his notes for five thousand dollars, but whether the notes were to be given prior or subsequent to the commencement of the partnership he does not know; that he was called on to draft articles of partnership, but understood that they were not executed, because McGraw was to get Pulling's notes and have them indorsed. Mark Izod proves that he understood from the parties that Pulling was to become McGraw's partner, on condition that he executed two notes to the amount of five thousand dollars; that in an attempt at a settlement between the parties, he heard McGraw demand the execution and delivery of the notes, which Pulling refused to give, saying he had possession, and could not be turned out except by force. The deposition of Daly, taken by Pulling, proves that the condition upon which the partnership was formed was, that Pulling should give his notes to McGraw for half the stock; that McGraw expressed a confidence that he could get the notes at any time. From this reference to the testimony, I conclude that the agreement between the parties was virtually a contract on the part of Pulling to buy one half of McGraw's stock of drugs and medicines, and then carry on the business jointly as partners; and that the execution and delivery of the notes was a condition precedent; and that no right vested in Pulling until he complied with it, or it was distinctly waived by McGraw.

It is a general and familiar principle of law, that in sales of goods, to be paid for in cash or secured by note, the payment of the one or the delivery of the other is a condition precedent, implied in the contract of sale. 2 Kent's Com. 492. And in such case, if the goods are even delivered, yet if the delivery is made subject to the delivery of the note to be given, the right of prop-

erty in the goods is not changed. 2 Kent 497, 489; Barrett v. Pritchard, 2 Pick. 512; Copland v. Bosquet, 4 Wash C. C.R. 588; Whitewell v. Vincent, 4 Pick. 451.

But it is said that although the terms of the original agreement may have required a delivery of the notes to be given by Pulling before the commencement of any interest on his part in the goods, and as antecedent to a partnership, yet that the subsequent conduct of the parties, in holding themselves out to the world as partners, opening partnership books, and vending goods under a partnership name, is evidence that McGraw waived or dispensed with that condition. I have no doubt that the original terms of a partnership may be waived or tacitly changed by the conduct of the partners, so as to substitute new terms and conditions. Where the partners have, by common consent, acted upon a rule variant from their original agreement, I can see no reason why they should not be held to have adopted such rule as a part of the terms of their association. This seems to have been the doctrine of Lord Eldon in the case of Const v. Harris, 1 Turner & Russell, 496. But before the terms of the original agreement can be considered as waived, superseded or dispensed with, it must appear that some new terms have been agreed upon as a substitute. In the case of Robinson v. Paige, 3 Keys, 114, it was held that a mere treaty for a change in the terms of a contract, does not amount to a waiver, unless it is shown that it was the intention of the parties that there should be an absolute abandonment of those terms. Was there any substitution of new terms in the contract in this case, or any intention shown to absolutely abandon those in the original agreement? I think not. Although such an inference seems warrantable from the conduct of the parties, yet the testimony shows that such inference is not consistent with the truth of the case. The deposition of Daly, on cross examination, shows that McGraw expressed a confidence that he could get Pulling's notes at any time. This deposition shows two things:

1. That McGraw did not waive nor intend to waive the execution and delivery of the notes, and that he considered such delivery as indispensable to vest Pulling with an equal interest in his stock of medicines.

2. McGraw's confidence that he could get the notes at any time accounts for his speaking of the partnership as already existing, and of proceeding to business as though the contract were complete.

The fact proven by Edwards, that the written articles of partnership were left open, because the notes had not been made, and the fact that those articles were not afterwards signed by the parties, are full evidence to my mind that the parties themselves did not consider their contract as complete without the execution and delivery of the notes to be made by Pulling. Then, although Pulling was ostensibly admitted as a partner entitled to one half of the stock, yet it is clear that he was so admitted upon the condition and understanding that he would execute and deliver his notes well indorsed, according to the agreement; and there is nothing in the testimony to show any distinct · act of waiver of this condition on the part of McGraw. If, then, there was a delivery of the goods in part to Pulling, it was a conditional delivery. In the case of Whitewell *v.* Vincent, 4 Pick. 451, the court say: "It is not necessary, in order to make the delivery conditional, that an express declaration should be made to that effect, at the time of the delivery. It is sufficient if enough appears to show that such was the intention of the parties." And it was held in that case, that where goods are sold upon condition that the vendee gives a satisfactory note for the price, and he does not comply, the property does not pass. The same rule was laid down in the case of Copland *v.* Bosquet, 4 Wash. C. C. Rep. 588. And I know of nothing in the nature of a contract by which one party agrees to sell to the other one half of his stock in trade, with a view to a partnership, which would change the application of the rule. It is laid down that where one of several partners agrees to contribute goods as a part of his stock, this agreement does not transfer the right of property to the partnership unless there is a delivery. Story on Part. 130, 131, note. I think it clear that Pulling was permitted to act and to be held out as a partner upon the condition that he was to comply with the agreement, and that his possession under these circumstances did not change the right of property as to one half the stock of goods. In the case of Stevens *v.* Guppy, 3 Russ. 171, it was held that the

purchaser of a share in a copartnership business does not waive objections to the title by taking possession of the property, and acting as a partner, where it appeared that it was the intention of the parties that possession should immediately commence, and the conveyance be made at a future day. I think that the inference drawn from Pulling continuing in the store and exercising acts of ownership, is satisfactorily accounted for, as well from the ·fact that he was, at the time of the proposed partnership, acting as a clerk in the concern, as from the reliance which the complainant alleges he continued to place upon Pulling's promise to make and deliver his notes in payment for a share of the goods. McGraw does not appear at any time to have waived a compliance with this condition. On the contrary, we find him, according to the testimony of Cotter, calling for an execution and delivery of the notes a short time after the partnership was to commence; and according to the testimony of Izod, again renewing that call about January, 1838, when Pulling still refused to comply with his contract in the manner agreed upon.

I am clearly of opinion that Pulling's failure to comply when urged so to do, amounted to an abandonment of the contract on his part, and that McGraw was at liberty to consider the agreement at an end, and to call upon this court for an injunction against any interference on the part of Pulling with the books, stock, or money of the concern. Where by the terms of a contract the acts to be performed are mutual and dependant, either party may abandon the contract upon the failure of the other to comply with his part of it. Ketchum *v.* Evertson, 13 John. R. 359; 12 John. 274. So where goods are to be paid for on delivery, if on the delivery the vendee refuses to pay for them, the vendor has a lien for the price, and may resume the possession of the goods, upon the ground that the delivery was conditional. Palmer *v.* Hand, 13 John. 434.

Pulling's proposition in his cross bill to execute the notes, comes too late. This is not the kind of case in which a court of equity will extend indulgence to a party by giving him time to complete his contract. From this view of the case I conclude that no interest in the stock of goods was to vest in Pulling until he gave his notes therefor; and that this condition was not waived by McGraw.

But suppose the partnership is to be considered as complete, by reason of McGraw's neglect to enforce an execution and delivery of the notes from Pulling, and by his having suffered him to be held out as a partner, would this materially change the rights of Pulling? Would it be equitable and just that he should be allowed to come in and share one half the profits of McGraw's capital, without having advanced a dollar to the common stock? Pulling says in his answer that it was understood that he was to pay for his half out of the profits of the concern. I find nothing in the testimony to support this extraordinary pretension. According to this, McGraw was to give him one half of his stock of goods and wait till Pulling could realize enough from the profits arising from the sale thereof to pay for them. This would indeed be like the fabled partnership for hunting formed between the lion and other beasts of the forest, in which the lion graciously appropriated the whole prey to his own use. I understand that the first canon of the law of partnership is, that each party must bring something either in money, property or labor into the common stock or fund, and that a partnership formed upon any other basis would be a mere nullity. Story on Part. 23; 3 Kent 24.

Upon the whole, I shall direct a decree dismissing the cross bill, and perpetually enjoining Pulling from interfering in any manner with the stock of drugs and medicines which formed the subject of the contract. The injunction to take effect upon McGraw's executing a bond with security, to be approved by me, conditioned to indemnify Pulling against any liability he may have incurred to third persons, by having been held out as a partner of McGraw. The neglect of McGraw to put an end to the agreement at an earlier period, I think properly subjects him to the costs of the suit. He will accordingly be decreed to pay all costs.