COUNTIES OF HAMPSHIRE, FRANKLIN AND HAMPDEN
SEPTEMBER TERM 1854,

ARGUED AND DETERMINED

AT BOSTON, IN JANUARY 1855.

PRESENT:

Hon. LEMUEL SHAW, Chief Justice.
Hon. CHARLES A. DEWEY,
Hon. THERON METCALF,
Hon. GEORGE T. BIGELOW,  } Justices.
Hon. BENJAMIN F. THOMAS.

HENRY COGGILL & another *vs.* HARTFORD AND NEW HAVEN
RAILROAD COMPANY.

A sale and delivery of goods, on condition that the title shall not vest in the vendee until payment of the price, passes no title until the condition is performed; and the vendor, if guilty of no laches, may reclaim the property, even from one who has purchased from his vendee, in good faith, and without notice.

REPLEVIN of fifteen bags of wool. At the trial in the court of common pleas, the plaintiffs proved that they, through a broker

in New York, on the 6th of March 1851, sold the wool to Earle & Thayer, woollen manufacturers at South Hadley in Hampshire county; that the terms of sale were the note of Earle & Thayer payable in six months; that, on the 13th of March, the wool was delivered to the Western Railroad Corporation, directed to Earle & Thayer at Springfield, and duly arrived at Springfield on the 14th; that Earle & Thayer failed and stopped business, without having given any note for the wool; and the plaintiffs, on the 27th of March, demanded the wool of the defendants, and paid them all claims for freight thereon.

To meet this evidence, the defendants offered to prove that, on the 20th of March, Earle & Thayer sold this wool to Kellogg & Co. of Hartford, who advanced money thereon to Earle & Thayer, and had no knowledge or notice of the terms of the sale to Earle & Thayer, or of whom Earle and Thayer purchased, or how long it had been in their possession; and that the defendants received the wool of Earle & Thayer to be carried to Kellogg & Co. pursuant to the sale to them.

But *Hoar*, J. instructed the jury that " if they should find that the sale from the plaintiffs to Earle & Thayer was a conditional one, and that nothing had been done by the plaintiffs or their agent to indicate a waiver of the condition, or a consent that the wool should be delivered and the property pass without the immediate return of the note; and if there had been no laches or want of diligence in reclaiming the property when it was found that the note did not come back; the property did not pass; and the facts which the defendants offered to prove would not constitute a defence."

The defendants submitted to a verdict for the plaintiffs, and alleged exceptions to these instructions.

This case was argued and decided at October term 1853.

*E. W. Bond,* for the defendants.

*R. A. Chapman & J. Wells,* for the plaintiffs.

BIGELOW, J. It has long been the settled rule of law in this commonwealth, that a sale and delivery of goods, on condition that the property is not to vest until the purchase money is paid or secured, does not pass the title to the vendee, and that

the vendor, in case the condition is not fulfilled, has a right to repossess himself of the goods, both against the vendee, and against his creditors, claiming to hold them under attachments. *Hussey* v. *Thornton,* 4 Mass. 405. *Marston* v. *Baldwin,* 17 Mass. 606. *Barrett* v. *Pritchard,* 2 Pick. 512. *Whitwell* v. *Vincent,* 4 Pick. 449. *Hill* v. *Freeman,* 3 Cush. 257.

In the case at bar, the jury have found that the original sale and delivery by the plaintiffs were conditional. But the defendants claim to hold the goods in controversy, as bailees of a *bona fide* purchaser from the original vendee, on the ground .that, having purchased them in good faith, the rule above stated is not applicable, and that a valid title to the property is vested in such purchaser. This position is supposed to be supported by a *dictum* of Chief Justice Parsons in *Hussey* v. *Thornton,* by which it is implied that in such cases the vendor cannot reclaim goods in the possession of *bona fide* purchasers from his vendee. But the authority of this *dictum,* so far as it ever had any, was entirely overthrown in *Ayer* v. *Bartlett,* 6 Pick. 78, where Chief. Justice Parker said that it could not be sustained, as a general proposition. Some of the elementary writers have stated such a doctrine in unqualified terms; but the authorities cited by them in its support do not sustain the text. Hilliard on Sales, 100 *& seq.* Story on Sales, § 313. Chancellor Kent, after stating the rule as to vendees and attaching creditors, in conformity with the decisions above cited, adds, that as to *bona fide* purchasers, the rule might be otherwise. 2 Kent Com. '6th ed.) 498. In *Hill* v. *Freeman,* 3 Cush. 259, the most recent case on the subject in our own reports, the court say, that the right of the vendor to reclaim property in such cases, in the hands of *bona fide* purchasers, is an open question.

Looking then at this case, as we think we may, as one not depending on authority, but to be determined on just and sound principles, it is difficult to see any good and satisfactory reason for the distinction, which is attempted to be made, between the rights of the vendee and his creditors to goods sold and delivered on condition, and those of · *bona fide* purchasers. All the cases turn on the principle, that the compliance with th

conditions of sale and delivery is, by the terms of the contract, precedent to the transfer of the property from the vendor to the vendee. The vendee, in such cases, acquires no property in the goods. He is only a bailee for a specific purpose. The delivery, which in ordinary cases passes the title to the vendee, must take effect according to the agreement of the parties, and can operate to vest the property, only when the contingency contemplated by the contract arises. The vendee therefore, in such cases, having no title to the property, can pass none to others. He has only a bare right of possession; and those who claim under him, either as creditors or purchasers, can acquire no higher or better title. Such is the necessary result of carrying into effect the intention of the parties to a conditional sale and delivery. Any other rule would be equivalent to the denial of the validity of such contracts. But they certainly violate no rule of law, nor are they contrary to sound policy. The cases above cited expressly recognize them as legal and valid contracts between the vendor, on the one hand, and the vendee and his creditors, on the other. If valid to this extent, it necessarily follows that they are so for all purposes. If the property does not pass out of the vendor for one purpose, it certainly does not for another. If it remains in him at all, it is because such is the agreement of the parties, and it cannot be devested by any act of the vendee until the contract is fulfilled. A *bona fide* purchaser, as well as an attaching creditor, must acquire his title through the vendee. If the latter has no title, he can communicate none. The purchaser and the attaching creditor are, in this respect, upon the same footing. No equities can intervene to give the former a better right as against the original vendor than the latter; they are *in æquali jure.* Neither of them has a legal title to hold the property.

A mere possession by the vendee carries with it no right or authority to transfer the title. That continues in the vendor until the conditions of sale and delivery are complied with by the vendee, or are waived by the vendor. And this constitutes the precise distinction between a sale and delivery of goods on condition, and a sale procured by fraud or false representations on the part of the vendee. In the latter case, the property passes

by the sale and delivery, because such was the agreement and intent of the parties. Therefore the vendee, having the property as well as the possession of the goods, can pass a good title to a purchaser, who takes the goods in good faith and without notice of the fraud. But the vendor can reclaim the goods by rescind-ing the contract and avoiding the sale, so long as they remain in the hands of the vendee, or of any one who has taken them with notice of the fraud, or without paying a valuable con-sideration for them. In such case, the title to the goods is in the vendee, though defeasible at the option of the vendor, because the vendee, or those claiming under him with knowl-edge of the fraud, cannot honestly or legally hold the prop-erty as against him. But, in the case of a conditional sale and delivery, the title does not pass from the vendor until the condition is fulfilled. The vendee obtains no right, under such sale, to dispose of the property, but only to hold it until the terms of the contract are complied with. *White* v. *Garden*, 10 C. B. 919.

It is urged, and this we suppose to be the main argument on which the contrary doctrine is founded, that as possession of personal property is *prima facie* evidence of title, it would fur-nish fraudulent parties with the means of defrauding honest purchasers, to intrust them with the apparent ownership of prop-erty, while the real title is allowed to remain in a third party, who can reclaim it at pleasure. If a vendor, by collusion with his vendee, entered into the contract, and annexed the conditions, for the purpose of enabling the latter to obtain a false credit, or to impose on innocent persons, by means of the property placed in his possession, the argument would be decisive. In such case, the vendor, being a party to a fraud, would be estopped to set up any title to the property; and creditors, as well as inno-cent purchasers of the vendee, might well claim to hold it, on the ground that it was placed in his possession for a fraudulent pur-pose. But when the contract of sale is entered into in good faith, for the purpose of enabling the vendor to realize his purchase money, or obtain security for it, in conformity with the original terms of the bargain, the argument *ab inconvenienti* is

without any foundation in principle or authority. The general rule of the common law has always been that a man who has no authority to sell cannot, by making a sale, transfer the property to another. Chit. Con. (8th Amer. ed.) 342. Except in cases of sales in market overt, which do not exist in this commonwealth, possession, of itself, confers no authority to sell. A lessee of chattels or a bailee for a special purpose can pass no title to a vendee, without authority from the lessor or bailor; and yet the property is intrusted to their possession, as apparent owners, in the same manner as to a vendee under a conditional sale. Besides; there is no good reason or equity in placing the burden of a fraudulent sale by a vendee, in violation of the condition on which he received the property, upon a *bona fide* vendor, rather than upon a *bona fide* purchaser. On the contrary, if either is to lose by his fraudulent act, it should be the latter, who has dealt with a party having no authority, instead of the former, who relies upon a valid subsisting contract as the foundation of his claim. It is the duty of the purchaser to inquire, and see that *his* vendor has a good title to the property which he undertakes to sell. These views are supported by the authorities. Long on Sales, (2d Amer. ed.) 189, and cases cited. *Copland* v. *Bosquet*, 4 Wash. C. C. 588. *D'Wolf* v. *Babbett*, 4 Mason, 294. *Lucy* v. *Bundy*, 9 N. H. 298. *Porter* v. *Pettengill*, 12 N. H. 299. *Herring* v. *Willard*, 2 Sandf. 418. *Barrett* v. *Pritchard*, 2 Pick. 512. *Dresser Manuf. Co.* v. *Waterston*, 3 Met. 9.

The instructions given to the jury, in the present case, were in conformity with these principles; and were carefully guarded, so as to prevent the plaintiffs from recovering if they had been guilty of laches in reclaiming their property, or had in any way waived the conditions on which the property in controversy was sold and delivered to the original vendee.

*Exceptions overruled.**

---

* A similar decision was made in Suffolk, March term 1856.

LEMUEL GILBERT *vs.* CHARLES G. THOMPSON.

REPLEVIN of a piano. The case was submitted to the decision of the court upon the following facts: On the 15th of July 1848, the plaintiff made a condi-

---

tional sale of the piano to Galusha, the terms being that, until the full price of $280 should be paid, the title should not vest in Galusha, but the plaintiff should continue to be owner of the piano, having a right to take possession of it and remove it if Galusha should fail to pay for it on demand, and in that event Galusha should pay a stipulated rent. The plaintiff delivered the piano to Galusha upon these conditions, and he removed it from the plaintiff's warehouse in Boston to his own house in Chelsea. The plaintiff shortly afterwards demanded of Galusha payment of the price of the piano, and received a small portion thereof, amounting to $45 ; and had since repeatedly demanded payment of the balance, but without success. On the 19th of July, Galusha mortgaged the piano to Knight to secure the payment of a debt of $150, (which mortgage was duly recorded,) and, on the 25th of November following, sold and delivered the piano to Knight, who, on the 3d of December, sold it to the defendant.

THE COURT gave judgment for the plaintiff.

*E. F. Hodges*, for the plaintiff.

*E. G. Dudley*, for the defendant.